UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDYN BLACHARSKI,

Petitioner,

v.                                             CAUSE NO. 3:23cv521 DRL
                                                         3:20cr103 DRL
UNITED STATES OF AMERICA,

Respondent.

OPINION AND ORDER

On June 5, 2023, Brandyn Blacharski filed a timely *pro se* petition to vacate his sentence under 28 U.S.C. § 2255 [76]. He has since filed a flurry of additional things: he has five times moved to amend (supplement) his petition [88; 94; 95; 99; 100]; he has filed motions to expand the record [87, 93], for discovery [89], to compel [90; 91; 96; 97; 98; 102; 125], for a subpoena [101], for a response [118], to incorporate [126], and to suppress [127]; and he asks for court-appointed counsel [83]. After the court issued an order [103] in October 2024 explaining that it would not entertain further requests for amendment, he filed another motion [123] to expand the record in July 2025. In short, he advances arguments based on ineffective assistance of counsel, procedural violations, government misconduct, and new evidence. These arguments don't entitle him to *habeas corpus* relief.

BACKGROUND

On October 25, 2021, Mr. Blacharski pleaded guilty with a plea agreement to unlawfully possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). He was sentenced in March 2022 to a 71-month term of imprisonment. He appealed, then moved to dismiss his appeal. His motion was granted, and his conviction became final on July 7, 2022. His first-appointed trial counsel

represented him until just after the government filed a superseding indictment, at which point he was appointed new counsel. His plea agreement waived his right to contest his sentence under 28 U.S.C. § 2255 on any ground other than ineffective assistance of counsel.

The conduct undergirding Mr. Blacharski's conviction was more involved than suggested by his guilty plea. He used a stolen truck to drive an armed associate (Brandon Stahl) to confront another man, someone Mr. Stahl had threatened before. He helped Mr. Stahl scale a fence and break into a home, then saw him draw a gun and enter the basement. He heard gunshots, then retrieved a firearm from the basement while the victim lay dead nearby. From there, he drove Mr. Stahl to the hospital, then sold the "hot" firearm to a confidential informant out of state.

The court construes Mr. Blacharski's *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). His § 2255 petition includes several grounds for relief: ineffective assistance of counsel, government misconduct, and new evidence. He used a standard form but didn't sign the provision certifying that his attestations were true and correct. The government responded to the petition, and he replied. He then filed proposed amendments on January 31 and September 19, 2024 that raise additional claims and elaborate on those previously stated [88; 94; 95; 99; 100]. The court allowed the government to respond once more.

STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the

public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to such relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). This writ is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific won't suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show the petitioner isn't entitled to relief, the court needn't hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). That is the case here.

DISCUSSION

A.  *Motions to Amend.*

The court decides the scope of Mr. Blacharski's petition first. When a petitioner seeks to amend a § 2255 petition, a district court "should freely give leave when justice so requires." *See* Fed. R. Civ. P. 15(a)(2); *Coleman v. United States*, 79 F.4th 822, 827-28 (7th Cir. 2023). Under this rule, a district court should allow amendment unless it contravenes an applicable statute

of limitations, would be futile, is in bad faith, or would cause undue delay or undue prejudice. *Coleman*, 79 F.4th at 827.

A one-year statute of limitations applies to § 2255 petitions. For Mr. Blacharski, this period ended on July 7, 2023, one year after his conviction became final on July 7, 2022. *See* 28 U.S.C. § 2255(f)(1). He filed his motions to amend after this date, on January 31, 2024 [88] and September 19, 2024 [94; 95; 99; 100]. To be timely, these filings must relate back to the original pleading. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005); *Coleman*, 79 F.4th at 827-29; *see also Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999) (§ 2255 amendments that relate back aren't "second or successive" if there hasn't yet been a final decision because every prisoner has "one full opportunity to seek collateral review").

An amendment relates back if it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This happens when "the original and amended petitions state claims that are tied to a common core of operative facts," even if the amendment invokes a legal theory not suggested by the original pleading and relies on facts not originally asserted. *Mayle*, 545 U.S. at 664; *see Coleman*, 79 F.4th at 827. An amendment doesn't relate back if it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. The government must have "been put on notice as to the claim." *Coleman*, 79 F.4th at 828.[1]

---

[1] Mr. Blacharski also asks to incorporate grounds from his original petition and earlier motions to amend into his most recent motion to amend [126]. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). Incorporating past arguments into his most recent motion to amend does nothing to change what the court can consider—it remains before the court only to the extent it relates back. *Coleman*, 79 F.4th at 827-28.

Mr. Blacharski's petition presents five ineffective assistance of counsel claims [76]. Two relate to trial counsel's conduct ahead of his plea—an alleged failure to obtain certain evidence and advice concerning an expected sentence. Three concern trial counsel's performance at sentencing—the alleged failure to correct facts in the presentence report, failure to introduce alibi evidence, and failure to introduce mitigation evidence. The petition also includes claims asserting government misconduct and new evidence.

Mr. Blacharski's January 31, 2024 amendment [88] endeavors to present additional claims of ineffective assistance of counsel. The first relates to advice concerning the essential elements of 18 U.S.C. § 922(g)(1) ahead of his guilty plea. Another concerns trial counsel's failure to introduce evidence at sentencing to contradict facts in the presentence report. These seem to relate back because his petition also includes claims about the information he received before his guilty plea and the evidence introduced at sentencing. However, his third new argument claims a grand jury member knew him when he was indicted. This is an entirely new ground that relies on wholly different operative facts from his other claims. This claim doesn't relate back and is barred by the statute of limitations. *See* 28 U.S.C. § 2255(f)(1).

The September 19, 2024 amendments [96, 100-1] assert three new claims. The most generous reading of the first is that trial counsel was ineffective for failing to object to use of evidence subject to a proffer agreement to calculate his guideline range. This relates back because it again concerns counsel's conduct at sentencing. The second alleges the court violated Rule 32 at sentencing. Though this is the first claim about the court's sentencing conduct rather than that of trial counsel, it differs only in type, not in time. *See Mayle*, 545 U.S. at 650. It relates back too.

Finally, Mr. Blacharski says trial counsel was ineffective after sentencing for not turning over certain documents to appellate counsel. His original claims concern only trial counsel's performance before his plea and at sentencing; this post-sentencing argument differs in both time and type, based on different operative facts, so it doesn't relate back and is time barred. *See* 28 U.S.C. § 2255(f)(1). The remainder of his amendments seem only to elaborate on his earlier claims—to the extent they round out arguments, they relate back.

B. *Ineffective Assistance of Counsel.*

The Sixth Amendment to the United States Constitution guarantees a defendant the right to counsel—including the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To show a violation of this right, a petitioner must establish that (1) his counsel's performance was deficient, and (2) the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *see also Strickland*, 466 U.S. at 697; *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted).

The two-part *Strickland* test also applies to "challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the guilty plea context, the court applies the standard in a refined way. *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021). To assess counsel's effectiveness at the plea stage, the performance prong remains largely unchanged: the petitioner "must allege that he entered the plea agreement

based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966-67 (7th Cir. 2013). On the prejudice prong, the petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see Smith*, 989 F.3d at 581. This showing requires more than bare *post hoc* assertions; rather a petitioner must provide "contemporaneous evidence to substantiate [his] expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017); *see United States v. Merrill*, 23 F.4th 766, 770-71 (7th Cir. 2022).

     1. *Discovery.*

Mr. Blacharski says he asked trial counsel to obtain certain evidence—documents, videos, DNA results, affidavits, cellphone records—he believed would assist his defense [76 at 17]. He says counsel told him this discovery would be acquired if possible but that many of his requests went unfulfilled. He believes the evidence would've bolstered his defense.

One focus involves evidence to undermine the credibility of the government's informant—he says the informant's account of the gun sale alleges the transaction occurred at a time that an unnamed alibi witnesses would have established Mr. Blacharski was at a different location [76 at 14-15; 86 at 15-17]. He says trial counsel failed to depose the informant and told him affidavits were unnecessary unless he went to trial [76 at 14-15; 86 at 17].

His petition doesn't explain the other evidence he says he requested [76 at 17], but other filings provide better insight. He says he asked for DNA evidence from the gun to show he never possessed it [87 at 2-3]. He says law enforcement claimed in a criminal complaint affidavit that he called the confidential informant the night of the murder to arrange the sale of the firearm, but his and the informant's cellphone logs and location data would contradict

this account and demonstrate misconduct [93-1 at 2; 99-1 at 2]. Beyond these items, his filings lack some clarity, particularly because he doesn't always delineate what discovery he requested, what he received ahead of his plea or sentencing, and what he acquired afterwards, and his discovery-related complaints are often nested within discussion of other claims.

Counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. A "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "A reasonable investigation is not, however, the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight, would conduct." *Thomas v. Gilmore*, 144 F.3d 513, 515 (7th Cir. 1998).

The decision not to depose the informant was reasonable. A deposition of a prospective witness can only be taken to "preserve testimony for trial" under "exceptional circumstances," but Mr. Blacharski hasn't argued any existed. Fed. R. Crim. P. 15(a)(1). Based on this record, there was no need to preserve the testimony, much less an extraordinary reason, and this is no suggestion that the information would have been unavailable for trial, so it was appropriate that trial counsel didn't pursue one. Nor does Mr. Blacharski explain why this prejudiced his defense.

Next, the affidavits wouldn't have proved material. Mr. Blacharski doesn't provide affidavits now, and he says there's no telling what effect they would have had [76 at 15]. Assuming he correctly characterizes what they would have said, they would only address when he sold the firearm to the informant and not the fact of the sale. It was reasonable for trial

counsel not to pursue them because clarity on this timing issue would not have impacted his case. Nor would it have affected sentencing—he didn't object to the facts in the presentence report concerning his meetings with the informant (including that officers recorded him later asking for the gun back) [51 ¶ 9-10; 52], and the court cited the fact of his sale of the firearm, not the time at which it occurred [64 at 2-4].

Mr. Blacharski doesn't say in his petition why trial counsel was unreasonable in not pursuing the other evidence he sought, only that he thinks it would have helped his defense. Regarding DNA evidence, he says it would have shown he never possessed the gun. But the DNA evidence he references concerned a different gun, not the one he possessed. In addition, the presentence report says he sprayed the gun he possessed with cleaner and wiped it down before handing it to the informant, so the lack of DNA would not be conclusive [51 ¶ 25]. He also admitted to possessing the firearm, and the lack of DNA isn't uncommon. *See Logan v. City of South Bend*, 564 F. Supp.3d 719, 733 (N.D. Ind. 2021). Nothing about this DNA evidence about another gun would be conclusive of his innocence on this charge. Mr. Blacharski said in his plea agreement and at his change of plea hearing that he told his attorney everything he needed to know to advise him [42-1 ¶ 5; 72 Tr. 12], *see Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (a defendant's statements at his change of plea hearing "are presumed truthful"), and his counsel acted reasonably by not chasing irrelevant evidence.

On the cellphone information, the court cannot say trial counsel could have thought something from a criminal complaint affidavit was material after Mr. Blacharski had been twice indicted by a grand jury—one original and one superseding [10; 25]—and then chose to plead guilty. He doesn't argue that the alleged misstatement in the affidavit would have undermined

probable cause, much less that it would have impacted any subsequent proceedings. The timing of coordination of the sale would be immaterial.

Without more, the court can't say the decision not to pursue the evidence Mr. Blacharski cites was other than a reasonable strategic choice by trial counsel. He apparently believed the same at his change of plea hearing—he said he was fully satisfied with trial counsel [72 Tr. 12]. He said in his plea agreement he believed counsel had done all that anyone could do to assist him [42-1 ¶ 11], and when the court reiterated the question at his change of plea hearing, he replied, "I believe he's done an excellent job for me" [72 Tr. 12]. *See Bridgeman*, 229 F.3d at 592. Moreover, Mr. Blacharski doesn't say he wouldn't have pleaded guilty had the evidence been collected, *see Hill*, 474 U.S. at 59, nor does he identify some other material prejudice. His claim thus fails on both prongs.

2. *Guilty Plea.*

First, Mr. Blacharski says trial counsel inaccurately advised him about the sentence he could expect. He claims trial counsel said he would face no more than 37 months of incarceration and that the government was going to recommend 31 months in exchange for continued cooperation [76 at 15]. He also says trial counsel never told him that sentencing enhancements or upward departures could apply. Here he says he wouldn't have pleaded guilty had he known he might receive a 71-month sentence.

The court presumes a defendant's statements at the plea hearing are truthful. *See Bridgeman*, 229 F.3d at 592. Such statements are made under oath, so the court is "generally justified in discrediting the proffered reasons for the motion . . . and holding the defendant to his admissions at the plea colloquy." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009)

(quotation and citation omitted). Even if the defendant receives bad information from counsel, the court's colloquy can 'ameliorate the adverse impact of his counsel's misinformation." *Hutchings*, 618 F.3d at 699 (quoting *Moore v. Bryant*, 348 F.3d 238, 243 (7th Cir. 2003)); *see also United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) ("The purpose of a [plea] colloquy is to expose coercion or mistake."). A defendant's incorrect belief about his sentence alone is insufficient to warrant relief. *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008); *United States v. Howard*, 341 F.3d 620, 622 (7th Cir. 2003).

Mr. Blacharski's signed plea agreement accurately stated that he faced a maximum term of imprisonment of 10 years [42-1 ¶ 9(c)]. *See* 18 U.S.C. § 924(a)(2) (2018). He said under oath at his change of plea hearing that he read and reviewed the plea agreement before he signed it [72 Tr. 13-14]. The court then explained that he faced a maximum term of imprisonment of 10 years, the court was not obliged to choose a sentence within the guideline range, and the court could reach a sentence he hadn't discussed with his lawyer [*id.* Tr. 18-21]. Mr. Blacharski said he understood the potential penalties and this process of deciding a sentence [*id.*]. He also admitted that no one had made any promises or predictions to him as to what sentence he would receive [*id.* Tr. 26].

He offers no "compelling explanation" why the court shouldn't credit these statements over those he now makes in his petition. *Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006); *see Patterson*, 574 F.3d at 437. That is particularly true when his petition has not been presented under oath, so the court easily prefers statements under oath over those that aren't. Even assuming trial counsel provided deficient assistance, any error was remedied by the plea

agreement and colloquy. *See Hutchings*, 618 F.3d at 699. A mere underestimate of his sentence isn't enough. *See Bowlin*, 534 F.3d at 660; *Howard*, 341 F.3d at 622. There is no prejudice.

He also says trial counsel didn't explain a material element of 18 U.S.C. § 922(g)(1)—the government's obligation to show he knowingly possessed a firearm [88 at 2-3]. He says, albeit not under oath, that someone else secreted the firearm into his truck the night of the shooting and he didn't know it was in his vehicle until the informant noticed it, brought it to his attention, removed it, and kept it [76 at 18-19]. He swears he told trial counsel this and wouldn't have pleaded guilty had he been aware of the "knowing" requirement [88 at 2-3].

To convict Mr. Blacharski under 18 U.S.C. § 922(g)(1), the government had to show he "knowingly" possessed a firearm. *See* 18 U.S.C. § 924(a)(2) (2018); *see also Rehaif v. United States*, 588 U.S. 225, 227 (2019) (reciting elements of this offense, including knowing possession of a firearm and knowing of prohibited status). Mr. Blacharski agreed in his plea agreement and at his plea hearing that he "possessed a Smith & Wesson firearm" [42-1 ¶ 9(b); 72 Tr. 16-17]. The government recited § 922(g)(1)'s essential elements in advance of his change of plea, including the requirement that "the defendant possessed a firearm" [72 Tr. 16]. Mr. Blacharski confirmed he understood the government's burden [*id.*]. In neither the plea agreement nor his plea colloquy did he, the government, or the court seemingly refer to "knowing" possession [42-1 ¶ 9(b); 72 Tr. 16-17]. The concern is whether Mr. Blacharski understood the element, *United States v. Fernandez*, 205 F.3d 1020, 1025 (7th Cir. 2000) ("Unless the defendant fully comprehends the elements of the crime to which he is confessing, his plea cannot be said to have been knowingly and voluntarily entered.") (quotation omitted), or

whether his representations of guilt were the product of misunderstanding, *see Blackledge v. Allison*, 431 U.S. 63, 75 (1977).

Mr. Blacharski's facts are comparable to those in *United States v. Williams*, 946 F.3d 968 (7th Cir. 2020), in which the defendant sought to withdraw his guilty plea for being a felon in possession of a firearm under § 922(g)(1). His plea colloquy didn't establish whether he had known when he possessed a gun that he had been convicted of a crime punishable by a term of imprisonment exceeding one year. *Id.* at 970. Months later, *Rehaif* established that a defendant's knowledge of that status is an element of the offense. *Id.*; 588 U.S. at 227. Finding it implausible that the defendant didn't understand his status, the court noted facts he would have known when he pleaded, as established by common sense and his post-plea admissions. *Williams*, 946 F.3d at 973-74. He had served a term of imprisonment longer than a decade before he possessed the firearm, and he acknowledged in his sentencing memorandum that his status as a felon made it difficult for him to obtain work. *Id.* Given this, the court found that he would still have pleaded guilty had he been informed of the status element. *Id.* at 974.

Though Mr. Blacharski's case concerns knowing possession of a firearm rather than his known unlawful status, *Williams* remains instructive. In *Williams*, the court found that the defendant understood his felon status at his plea. Here, the evidence likewise indicates Mr. Blacharski understood at his plea that he knowingly possessed the firearm.

He made consistent, relevant admissions from his proffer, plea, and sentencing. During his proffer, in which he agreed to be completely truthful, he "stated he recognized a firearm that *he took* the night of the murder and sold it to a confidential informant" [112-1 ¶ 2, 14] (emphasis added). He later admitted to possessing a firearm in his plea agreement [42-1 ¶ 9(b)].

He admitted four times that he "possessed" the firearm during his plea colloquy [72 Tr. 16-17, 29], which makes it all but impossible to think he didn't know what knowing possession was or that his possession occurred mistakenly or accidentally. His presentence report also said he retrieved the firearm from the scene of the shooting, then transported and sold it to the confidential informant, who later recorded his offer to take the gun back [51 ¶ 9-10, 24-25]. He said at sentencing that he read and reviewed the presentence report with trial counsel [73 Tr. 6]. He offered no objections to these facts [52; 73 Tr. 6].

There is no indication on this record that, when Mr. Blacharski possessed the firearm, he acted through ignorance, mistake, or accident. The facts instead demonstrated that he took the firearm, actually possessed it by exercising control over it, and then sold it to an informant. Even outside the law, a common understanding of the word "possession"—the act of holding something in one's control, *see Possession*, Oxford English Dictionary (last visited Sept. 15, 2025)—would have made clear to Mr. Blacharski (someone with a GED without any mental health issues) that his retrieval, handling, and hand-off of the firearm involved actual possession. *See United States v. Alexander*, 163 F.3d 426, 428-29 (7th Cir. 1998) (a person has actual possession of a thing if he knowingly has direct physical control over it.). He has not presented facts that justify *habeas corpus* relief, and instead his position is altogether incredible. Everyone knows holding a firearm entails knowing that they possessed it. His offer to take it back from the informant further shows Mr. Blacharski knew he had it earlier. Even if trial counsel didn't explain the nuances of knowing possession, Mr. Blacharski would have sufficiently understood the element when he pleaded guilty. The court can easily infer he

believed the government could prove he knowingly possessed the gun. *Cf. Williams*, 946 F.3d at 973-74.

Moreover, Mr. Blacharski offers only *post hoc* assertions and no contemporaneous evidence that he wouldn't have pleaded guilty had the knowledge element been explained to him. *See Lee*, 582 U.S. at 369; *Merrill*, 23 F.4th at 770-771. He says counsel knew he was innocent of possession, but he provides no substantiation [88 at 2]. He points to the information he shared during his proffer, but the proffer narrative contradicts him, not helps him. These circumstances only bolster the idea that he intended to plead based on the weight of the government's evidence against him. Even he recognized that it was "in [his] best interests to plead guilty" [72 Tr. 28-29]. He can't show prejudice, so this claim fails.

3. *Sentencing.*

At sentencing, neither Mr. Blacharski nor the government objected to the presentence report [52; 73 Tr. 6]. Neither party presented evidence, though there were statements from members of Mr. Blacharski's family [73 Tr. 8-14]. He received enhancements for possessing a firearm in connection with another felony offense and for obstructing justice; after receiving full credit for acceptance of responsibility, his final offense level came to level 17 [64 at 1-2]. He fell in criminal history category VI, resulting in a recommended guideline range of 51-63 months [*id.* at 2]. He asked for a sentence of 51 months, and the government recommended a sentence at the high end of the guideline range. The court sentenced him to 71 months imprisonment followed by two years of supervised release [64 at 5].

Mr. Blacharski argues trial counsel was ineffective at sentencing. He first says trial counsel failed to correct facts in the presentence report—namely, that he knew his cohort (Mr.

Stahl) was armed as they drove to the house where the shooting occurred and that his cellphone contained pictures of him handling and shooting firearms [76 at 13]. He says his lawyer advised against arguing for these corrections out of concern that he would lose credit for acceptance of responsibility and would get a higher sentence [*id.*].

Trial counsel was correct that challenging these facts from the presentence report could lead to a finding that he did not accept responsibility and to a higher sentence. *See United States v. Major*, 33 F.4th 370, 383 (7th Cir. 2022). Though he didn't need to admit relevant conduct, falsely denying it could factor into the analysis of whether he had accepted responsibility. U.S.S.G. § 3E1.1 app. n.1. And with an obstruction enhancement, this reduction was already on precarious footing. *See* U.S.S.G. § 3E1.1 app. n.4; *United States v. Bennett*, 708 F.3d 879, 892-93 (7th Cir. 2013). Accordingly, the choice not to challenge these facts was strategic and within the bounds of reasonable representation. *See United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000) (courts "presume that the attorneys made reasonable judgments and decline to second guess strategic choices."). Lending support to this decision, at least regarding one of his complaints, the presentence report doesn't say he knew Mr. Stahl was armed when he picked Mr. Stahl up, only his later acknowledgement that Mr. Stahl had a firearm at that time [51 ¶ 24], so the conceived objection would be of no moment.

Mr. Blacharski also suffered no prejudice. In reaching a sentence, the court didn't say he knew Mr. Stahl was armed when he picked Mr. Stahl up, only that he knew Mr. Stahl was armed [64 at 2]. This is supported by the presentence report ("The defendant observed Stahl pull out his gun and head down the basement stairs" [51 ¶ 24]), and Mr. Blacharski echoes this in his petition [76 at 13]. As for whether the pictures on his cellphone truly depicted him

handling or shooting firearms, the court mentioned them as part of a broader discussion of his history of illegal association with and risk of recidivism specific to firearms, noting also that his past burglary convictions involved theft of firearms and that he absconded with and sold a "hot" firearm [64 at 3-4]. He hasn't explained how an objection to the photos would have changed the court's assessment of his criminal history and recidivism risk. Nor does he argue the court would have reached a different sentence if these facts weren't considered, particularly given all the aggravating factors that the court marshaled.

Mr. Blacharski next argues trial counsel failed to challenge the confidential informant's credibility, which Mr. Blacharski believes would have altered his sentence. He says police reports proved the informant was a drug addict and criminal, information that would have undermined the evidence he provided the government [88 at 1-2]. He says the court enhanced his sentence by relying on the informant's assertion that Mr. Blacharski sold the informant the firearm [*id.* at 14].

Trial counsel was justified in not raising the informant's drug and criminal habits with the court. To the extent the police reports would have shown the informant was a drug addict or criminal, this doesn't cast material doubt on Mr. Blacharski's sale of the firearm. Drug users and criminals can provide accurate information, particularly when bolstered by other reliable evidence. Here, the informant helped law enforcement record Mr. Blacharski ask to repurchase the "hot" handgun [51 ¶ 10], lending credence to the informant's evidence about the original sale. Trial counsel reasonably chose not to pull these threads.

Moreover, Mr. Blacharski suffered no prejudice from trial counsel's decision not to attack the informant's credibility. He didn't object to the presentence report, including those

paragraphs detailing his sale of the firearm [52], and he admits again in his brief to transporting the firearm to the informant [86 at 14-15]. His only evidence showing how the informant otherwise acquired the weapon is a *post hoc* contradictory account. The court can only conclude that trial counsel's choices not to raise the informant's drug addiction or criminal conduct didn't materially affect his sentence.

Finally, Mr. Blacharski makes two arguments about his cooperation with law enforcement. He first says trial counsel failed to introduce mitigating evidence at sentencing that he cooperated with law enforcement and proffered valuable information leading to Mr. Stahl's arrest [76 at 16-17]. This wasn't deficient performance, as the record was clear about his assistance. The presentence report said he "cooperated by waiving his 5th Amendment rights and providing a complete statement [to authorities]," including information implicating Mr. Stahl [51 ¶ 21, 29]. The court adopted these findings at sentencing and was aware of them in arriving at his sentence [64 at 1]. He also can't show prejudice. As he acknowledges, raising his cooperation could only have "possibly" affected his sentence and "not all" who assist law enforcement receive a lower sentence as a result [76 at 17; 86 at 18]. In truth, any more explanation on this front would have been functionally redundant. The court considered his later cooperation in taking the rarer step of affording Mr. Blacharski a reduction in accepting responsibility when he also obstructed judgment. And the court otherwise firmly set his sentence even accounting for his personal characteristics and mitigating circumstances, which his counsel advanced both well in writing and at the hearing.

Second, he says the facts underlying his enhancement for possessing a firearm in connection with assisting a criminal were taken from his proffer interview [96 at 2]. He says

these facts weren't otherwise known to law enforcement and, according to his proffer agreement with the government, couldn't be used against him. He says trial counsel was ineffective for failing to object to the use of those facts at sentencing.

The government acknowledges that facts Mr. Blacharski shared in his proffer were detailed in his presentence report [112 at 7]. In particular, the presentence report details his admission that he brought Mr. Stahl to the home at Mr. Stahl's request, helped him over a fence, was present at the shooting, and drove Mr. Stahl to the hospital [51 ¶ 24; 112 at 7]. But the government says these facts didn't impact the court's computation of his guideline range [112 at 17]. *See United States v. Haywood*, 777 F.3d 430, 433 (7th Cir. 2015) (sentencing court's consideration of facts at sentencing shielded by proffer agreement was harmless because it didn't affect the guideline calculation). To the extent the court relied on these facts in evaluating the 18 U.S.C. § 3553(a) factors, the government says that was permitted under the proffer agreement, the plea agreement, and the law.

By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. But limits can apply to what may be considered to calculate a guideline range. The Sentencing Guidelines instruct that incriminating information obtained pursuant to a cooperation agreement between a defendant and the government under the promise that the information will not be used against him shall not be used to determine the applicable guideline range, except as allowed in the agreement and save information known to the government before the proffer. U.S.S.G §§ 1B1.8(a), (b)(1).

19

"A proffer agreement is a binding contract, enforced according to its terms." *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008); *see also United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1998) (the government is held to the literal terms of the agreement and the most meticulous standards of promise and performance). In the signed proffer agreement between the government and Mr. Blacharski, the government agreed that information disclosed by Mr. Blacharski at his proffer that was not already known to the government "will not be used to determine the applicable Sentencing Guideline range" [112-1 at 2]. However, such information could still be disclosed to the court "and may be used to determine a sentence within the applicable guideline range" [*id.*]. The court has the authority to decide a sentence outside a guideline range too—for the range is but a recommendation—and nothing within the proffer agreement precluded the court from relying on reliable information for this purpose.

The facts underlying Mr. Blacharski's guideline calculation weren't tainted by information from his proffer. His base offense level was calculated based on the fact of his prior felony conviction [64 at 1], information that was in his criminal record [51 ¶ 54-59, 64-65]. His offense level was increased because he possessed the firearm while assisting Mr. Stahl and because he obstructed justice by selling the firearm [64 at 1-2]. A witness told law enforcement of Mr. Blacharski's assistance, and law enforcement learned from the informant that he sold the firearm [51 ¶ 9-10]. His offense level was decreased because he accepted responsibility [64 at 2], a determination based on his clear and timely acceptance, not facts in his proffer.

The court can't say counsel's failure to object to the inclusion of facts from the proffer in the presentence report was deficient performance. Neither the presentence report nor the

court used these facts to calculate the guideline range (other than to his benefit), and the information was appropriately available to the court for consideration under § 3553(a). There was also no prejudice when, in calculation of the recommended range, any consideration occurred to his benefit and when, under § 3553(a), the court could consider the information consistent with his proffer agreement. This claim thus fails.

C.   *Misconduct, Procedural Violations, and New Evidence.*

Mr. Blacharski's other arguments assert government misconduct, procedural violations, and new evidence relevant to his sentence. First, he says the government improperly withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)—such as exculpatory DNA evidence subsequently used in the trial of Mr. Stahl [76 at 18-19], cellphone and GPS data that would have undermined his criminal complaint [99-1 at 2], and reports from confidential informants that contradict law enforcement's account of when he sold the gun [*id.*]. Second, he says law enforcement lied in an affidavit and in grand jury testimony to secure his arrest warrant and indictment [*id.* at 19-20]. Third, he says the court inappropriately relied on certain facts at sentencing that were protected by his proffer agreement, in contravention of Rule 32 [93-1 at 7-8]. Finally, he says the acquittal of his associate Mr. Stahl undercuts his sentencing enhancement for possessing a firearm in connection with the felony offense of assisting a criminal [76 at 20-21]. These arguments can't proceed.

Mr. Blacharski knowingly and voluntarily waived the right to challenge his sentence on any ground other than ineffective assistance of counsel in his plea agreement, and he acknowledged this waiver in his change of plea hearing [42-1 ¶ 9(e); 72 at 23-24]. *See Plunkett v. Sproul*, 16 F.4th 248, 253 (7th Cir. 2021). This waiver applies to these claims.

There is, perhaps, the possibility of an exception for Mr. Blacharski's *Brady* claim, though it affords him no relief. The court of appeals has "suggested, but not held, that a plea agreement might not be voluntary if the defendant waived the right under *Brady v. Maryland* to receive 'exculpatory evidence of actual innocence' before pleading guilty." *United States v. Bridgewater*, 995 F.3d 591, 598 (7th Cir. 2021) (citation modified) (quoting *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003)) (finding defendant's compassionate release motion barred by his plea waiver).[2] Assuming he could challenge his plea with a *Brady* claim, he wouldn't prevail because the evidence isn't pertinent, much less exculpatory or reflective of his actual innocence.

Mr. Blacharski says the DNA evidence from a firearm introduced at Mr. Stahl's trial—a Hi-Point—revealed Mr. Stahl's and a Makayla Gann's DNA and not his own [76 at 18]. He doesn't say this, but this DNA evidence concerns a different gun than the one he is responsible for possessing. Mr. Stahl was accused of murder using a Hi-Point, and Ms. Gann admitted to stashing that under a mattress where it was recovered by law enforcement [51 ¶ 24]. That their DNA may have been found on another firearm has no bearing whether Mr. Blacharski was guilty of possessing a different firearm. Such evidence isn't exculpatory. Mr. Blacharski illegally possessed a Smith & Wesson [51 ¶ 24-25]. Even assuming this other DNA evidence was withheld from him before his plea, that doesn't make the plea involuntary.

As for the cellphone and GPS data and reports from confidential informants, Mr. Blacharski doesn't say they would have proved his innocence. Instead, he says they had

---

[2] There is disagreement among the sister circuits about whether there is a constitutional right to *Brady* material before a plea. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 392-94 (5th Cir. 2018) (*en banc*) (reviewing the state of the law among the circuits).

impeachment value because they would have contradicted the confidential informant's account of the firearm sale [99-1 at 2]. In weighing whether a *Brady* violation might imperil the voluntariness of a plea, the court of appeals observed a "significant distinction between impeachment information and exculpatory evidence of actual innocence." *McCann*, 337 F.3d at 788. Though withholding exculpatory evidence may invalidate a plea, it is "particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty," *id.* at 787 (quoting *United States v. Ruiz*, 536 U.S. 622, 630 (2002)) (emphasis removed). Impeachment information isn't enough, and the evidence wouldn't show Mr. Blacharski's innocence either—the court has already explained why more accurate information on when the gun sale happened would be immaterial. *See* B.1 *supra*. Altogether, his *Brady* allegations don't circumvent his waiver.

Were these claims not waived, they would be procedurally defaulted. A § 2255 motion is not a substitute for direct appeal. *Doe*, 51 F.3d at 698. "A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default." *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021). Mr. Blacharski never raised these arguments on direct appeal, and he doesn't argue cause or actual innocence as a reason why they are not also defaulted. *Id.* His misconduct, procedural, and new evidence claims fail due to waiver and procedural default.

D.  *Other Motions.*

Mr. Blacharski has filed additional motions connected to his petition. They include motions to expand the record [87; 93; 123], for discovery [89], to compel [90; 91; 96; 97; 98;

102, 125], for a subpoena [101], and to suppress [127]. He also requests court-appointed counsel [83].

Rule 6(a) of the Rules Governing Section 2255 Proceedings authorizes a district court to permit a party to conduct discovery in support of his § 2255 motion upon a showing of "good cause." Good cause exists when the petitioner's specific allegations give reason to believe he may, if the facts are fully developed, be able to show he is entitled to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). Rule 7 of the Rules Governing Section 2255 Proceedings allows a district court to direct the parties to expand the record if a petition is not dismissed. As discussed, Mr. Blacharski hasn't demonstrated he may be entitled to relief. Accordingly, the court will not authorize discovery—including compelling disclosures or granting subpoenas—and there is no need to expand the record.

The court likewise declines to appoint counsel because he has adequately presented his claims through several iterations of his filings, the claims lack merit, and neither discovery nor an evidentiary hearing is warranted. *See* 18 U.S.C. § 3006A(a)(2)(B); *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997).

Mr. Blacharski's motion to suppress the firearm he admitted to possessing is denied as untimely [127]. Pretrial motions were due November 8, 2021 [41]. Not only has that date long passed, but, as discussed, he also admitted in his plea agreement to possessing the firearm and that admission was uncontested at sentencing. The motion is late, without good cause to consider it via this petition. *See* Fed R. Crim. P. 12(c)(3); *United States v. Johnson*, 47 F.4th 535, 540 (7th Cir. 2022).

Finally, a few words on Mr. Blacharski's July 2025 motion to expand the record [123]. He provides a sworn affidavit in which he says he had a phone conversation with the government's informant in May 2025. The informant apparently said law enforcement coerced him into fabricating the story that Mr. Blacharski sold him a firearm. Mr. Blacharski says this is new evidence that bears on his petition. Not at all—not least when Mr. Blacharski admitted in his proffer, as unchallenged in his presentence report too, that he sold the firearm to the informant.

In addition, this filing is, in truth, an attempt to again amend, and the court informed Mr. Blacharski in October 2024 that it would not entertain any further requests for amendment. At some point, the filings must reasonably stop so that the court can actually rule. Even if the court were to consider the amendment, it wouldn't relate back—his petition's new evidence arguments were limited to the acquittal of Mr. Stahl. Even if they did relate back, Mr. Blacharski waived in his plea agreement his right to contest his sentence in this manner. For these many reasons, the court will deny the motion.

E. *Certificate of Appealability.*

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). When a petition is dismissed on the merits, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the evidence before the court and for the reasons given, including his waiver and procedural default of certain

issues, reasonable jurists could not debate the conclusions today. Mr. Blacharski hasn't shown an entitlement to § 2255 relief. The court denies a certificate of appealability.

CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART Mr. Blacharski's motions to amend [88; 94; 95; 99; 100]; and DENIES his § 2255 petition [76] as well as the motions to expand the record [87, 93, 123], for discovery [89], to compel [90, 91, 96, 97, 98, 102; 125], for a subpoena [101], for court-appointed counsel [83], and to suppress [127]. His motions for a response [118] and to incorporate [126] are DENIED AS MOOT. This order terminates the civil case.

SO ORDERED.

September 16, 2025                                  *s/ Damon R. Leichty*
                                                    Judge, United States District Court